[L. A. No. 1588.   Department One.—February 10, 1906.]

JEROME CHURCHILL et al., Administrators of Estate of Charles B. Boyes, Deceased, Respondents, v. JENNIE D. WOODWORTH et al., Defendants; JOHN T. JONES, Administrator of Estate of L. B. Woodworth, Deceased, Appellant.

DEED TO AGENT—MORTGAGE TO PLAINTIFFS—FORECLOSURE—PARTIES.—Where a deed intended as a mortgage to the plaintiffs as administrators of the estate represented by them was executed to one of them individually as an agent, in an action to foreclose the mortgage the plaintiffs as such administrators are the real parties in interest, and the agent to whom the deed was executed is not a necessary party to the action.

ID.—FORECLOSURE AGAINST HEIRS—ADMINISTRATOR AS NEW PARTY—SUMMONS—TIME FOR SERVICE.—Where the original action to foreclose the mortgage was brought against the heirs, who were properly served with summons, the court, after the subsequent appointment of an administrator, may order him to be brought in as a party, and that summons be issued and served upon him more than a year after the commencement of the action, when the time in which an action could be brought against him as personal representative of the deceased had not then expired.

ID.—APPOINTMENT OF ADMINISTRATOR—PLAINTIFFS NOT OBLIGATED.—The plaintiffs were not obligated to procure the earlier appointment of the administrator.   A party having a cause of action against the estate of a deceased person is not bound to cause administration to be had.   The statute expressly extends his time one year after the issuance of letters.

ID.—RIGHT OF ACTION AGAINST ADMINISTRATOR NOT WAIVED.—Plaintiffs did not waive their right to commence action against the administrator within a year after the issuance of letters by commencing the action against the heirs before his appointment.

ID.—ADVANCES BY MORTGAGEE TO DISCHARGE PARAMOUNT LIENS—NOTE NOT INCLUDING ADVANCES—STATUTE OF LIMITATIONS.—Though advances made by the mortgagee to protect the mortgage security by the discharge of paramount liens became part of the security, under section 2876 of the Civil Code, yet where upon subsequent settlement of the indebtedness a note was given, not including the advances, and the mortgagor lived four years thereafter, such advances not being secured by writing, are barred by the statute of limitations.   Portions of a debt secured by mortgage may become barred by statute, although as to other portions the statute has not run.

ID.—PLEA OF STATUTE—WAIVER OF OBJECTION.—A plea that the cause

of action for the advances is barred by section 339 of the Code
of Civil Procedure, without specifying subdivision 1 thereof, the
only subdivision applicable thereto, is not a nullity; and objection
to the manner of pleading the statute is waived by failure of
plaintiffs to urge it in the trial court.

ID.—MORTGAGE FOR MONEY TO DISCHARGE LIEN.—Where the grantee
in the deed made a mortgage on the property to raise money to
aid in the discharge of paramount liens upon the property, the
appellant should not be granted the affirmative relief of having the
property cleared of the lien without repaying the amount so bor-
rowed, and properly advanced by plaintiffs for the protection
of their security.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial. N. P.
Conrey, Judge.

The facts are stated in the opinion of the court.

Jones & Weller, for Appellant.

Hunsaker & Britt, and Gillis & Tapscott, for Respondents.

ANGELLOTTI, J.—This is an action brought by plaintiffs
to have a deed absolute in form declared to be a mortgage,
and to foreclose the same. Plaintiffs had judgment, and
defendant Jones, administrator of the estate of L. B. Wood-
worth, deceased, appeals from the judgment and from an
order denying his motion for a new trial.

Said Woodworth, on November 8, 1894, being indebted to
plaintiffs as administrators of the estate of Charles B. Boyes,
deceased, executed to Jerome Churchill a deed conveying cer-
tain real estate in the city of Los Angeles, which deed was in
form an absolute conveyance, but was executed solely as
security for the existing indebtedness to plaintiffs and such
future indebtedness to them as might accrue. On November
13, 1897, upon an accounting had between the parties, it was
found that the amount of such indebtedness then due was
$15,462.60, for which sum Woodworth executed his note to
plaintiffs, which note was made payable one day after date.
No part thereof or of the interest accruing thereon has ever
been paid. Woodworth died intestate October 27, 1900. On
November 14, 1901, no administsration of the estate of Wood-
worth having been commenced, plaintiffs commenced this

action against the heirs of deceased. On December 16, 1901, appellant was appointed administrator of the estate of Woodworth, and letters were issued to him. On November 12, 1902, summons was issued upon the original complaint. On December 10, 1902, the court, upon the application of plaintiffs, allowed the filing of an amended and supplemental complaint bringing appellant in as a party defendant, and ordered that summons be issued and served upon appellant, which was done.

Plaintiffs allege in their complaint, and the court found, that Jerome Churchill, in order to protect the security for the indebtedness, discharged certain paramount liens upon the mortgaged property, as follows, viz.: 1. By the payment of $3,286 on May 6, 1896, a mortgage executed by Woodworth and his wife to one Klokke, securing an indebtedness amounting on that date to such sum; 2. By the payment of $3,476.65 on May 6, 1896, a mortgage of Woodworth and his wife to the Columbia Savings Bank, securing an indebtedness amounting on that date to such sum; and 3. By the payment of $1,479.98, on April 15, 1896, a delinquent street assessment to the city of Los Angeles, for the widening of Los Angeles Street. The court allowed these amounts, with interest at the rate of seven per cent per annum from the respective dates of payment. Plaintiffs further allege in their complaint that Jerome Churchill was compelled to borrow seven thousand dollars of the amounts so advanced from the Los Angeles Savings Bank, and that he had on April 16, 1896, executed his note bearing seven per cent interest to said bank in said amount, and gave as security therefor a mortgage to said bank upon the property held by him under such deed, and subsequently, in December, 1900, renewed said note and mortgage, and "that no part thereof has been paid, and the same is now a valid and subsisting lien upon said premises." Defendants admitted the execution of such notes and mortgages by Churchill, and simply deny in general terms that Churchill had any right or authority to execute the same. The court found that the notes and mortgages were executed as alleged, and the proceeds used for the payments of the liens as alleged. If the mortgage executed by Churchill to the bank was originally a valid lien on the property, it must be held under the pleadings and findings that it continued to be such for the full amount due thereon at the time of judgment. The trial court, while

crediting plaintiffs with all the amounts expended by them, including the seven thousand dollars which was so borrowed, made no provision in the judgment for the freeing by plaintiffs of the land from the mortgage lien of the bank, but directed the sale of the land and the payment to plaintiffs of the aggregate amount found due, $39,979.97, which included the $7,000.80 borrowed. Upon these facts, several points are made for reversal.

1. It is urged that Jerome Churchill, to whom the deed was made, was a necessary party plaintiff. As between plaintiffs and the appellant, the plaintiffs are the real parties in interest, and there can be no question as to their right to bring the action in their own names. Their agent or trustee, Jerome Churchill, as an individual, was not a necessary party. (See Code Civ. Proc., sec. 367; *Anglo-Californian Bank* v. *Cerf,* 147 Cal. 384, [81 Pac. 1077].)

2. We can see no force whatever in the contention that the court was not authorized to bring appellant in as a party and direct the issuance and service on him of summons more than a year after the commencement of the action. As already noticed, summons had been issued as against the original defendants within the year, so the court had not lost jurisdiction of the case under subdivision 7 of section 581 of the Code of Civil Procedure. Appellant, upon his appointment as administrator (December 16, 1901), certainly became a proper party to be made defendant. It is apparent that a complete determination of the controversy could not be had without the presence of the administrator, representing as he did the other creditors of the deceased. The time within which an action might be brought against him as personal representative of the deceased had not expired when the order was made and summons issued, for, under section 353 of the Code of Civil Procedure, such action might be commenced at any time "within one year after the issuing of letters testamentary or of administration." Under section 389 of the Code of Civil Procedure, therefore, the court then had the right to order him to be brought in as a party, and to that end "order amended and supplemental pleadings, or a cross-complaint, to be filed, and summons thereon to be issued and served." Plaintiffs were under no obligation to procure the appointment of an administrator earlier. "Under that section [sec-

tion 353, Code Civ. Proc.] a party having a cause of action against the estate of a deceased person is not bound to cause adminstration to be had, because the statute expressly extends his time for one year after the issuance of letters." (*Davis v. Hart,* 123 Cal. 384, 388, [55 Pac. 1060].)

3. We are unable to see any merit in the contention that plaintiffs waived their right to bring an action against the administrator within a year after the issuance of letters by commencing the action against the heirs of deceased before the appointment of an administrator.

4. The advances made to discharge liens on the mortgaged property, for the purpose of protecting the security, were all made in April and May, 1896, while Woodworth did not die until October 27, 1900, more than four years thereafter. Appellant contends that the right of plaintiffs to recover the amount of these advances is barred by section 337 or section 339 of the Code of Civil Procedure, both of which sections were pleaded in bar by appellant. We are unable to see any good answer to this contention. It may freely be conceded, as contended by plaintiffs and upheld by many authorities, that the amount advanced for the protection of the security became at once a part of the debt secured by the mortgage, so that payment thereof could at one time have been enforced as a part of the claim for which the lien existed, but this concession does not materially assist them. It might bring these advances within the statute applicable to the original indebtedness, and thus enable them to be recovered with such indebtedness at any time before the statute had run against the same, but it could accomplish nothing more. The original indebtedness then existing would have been barred by the statute at the death of Woodworth, had it not been for the new note for $15,462.60 given on November 13, 1897. Plaintiffs contended, and the trial court concluded, that no part of these advances was included in the new note, and it is manifest that the only theory upon which a recovery of such advances, in addition to the amount due on the new note, can be sustained, is that such advances were not included. If the statute was running against the whole mortgage debt, including these advances, at the time of the giving of the new note, why did it not continue to run, regardless of such new note, against any portion of the debt that was not included therein? If

I owe one thousand dollars, secured by mortgage, and immediately prior to the completion of the statutory period give a new note for five hundred dollars only, it would not be contended that the giving of such note affected the running of the statute as to the other five hundred dollars. We can see no distinction material here between such a case and the one at bar. The statute was running against the whole of this debt, including these advances, and a new note was given as to a portion only of the debt. This necessarily excluded from the effect of the new note such portions of the debt secured by the mortgage as were not included therein. It is entirely immaterial that the excluded portions became a part of the mortgage debt solely by reason of the fact that they were made to protect the security. They either became a part of the mortgage debt, or they did not. If they became a part of the mortgage debt, they could only be relieved from the effect of the statute, which would, in due course, bar the debt, by some act on the part of the mortgagor which purported to include them. The giving of a new note by him for a specified amount not including them was not such an act. If they did not become a part of the debt, they necessarily became barred by the provisions of section 339 of the Code of Civil Procedure providing that actions must be brought within two years upon a contract, obligation, or liability not founded upon an instrument of writing. The effect of the new note was to keep the mortgage alive only as to such debt as was evidenced thereby. In this state the rule is that a mortgage is only an incident of the debt, and that when the debt is barred in whole or in part the mortgage is correspondingly barred. It cannot, of course, be successfully contended that portions of a debt secured by a mortgage may not become barred by the statute, although as to other portions the statute has not run.

We find no case in which the precise question here presented has ever been decided. There is some general language in some of the decisions relative to the right of the mortgagee to add to his own lien the amount of advances necessary for the protection of his security and collect the whole amount upon foreclosure of the mortgage, but the particular question here presented was not involved in any of the cases cited. In none of them did it appear that the

statute had run against any part of the original indebtedness. It must be borne in mind also that in the majority of states the rule is that the equitable remedy to enforce the lien of the mortgage exists notwithstanding the debt itself may be barred, provided the statute has not run against the mortgage. Under that rule, so long as the mortgage is kept alive, no part of the debt secured thereby can be barred in the sense that the mortgagee loses his right to enforce it against the mortgaged property. This appears to have been the rule in all the states from which cases are cited by plaintiffs, at the time such decisions were rendered. With us, however, as already observed, the mortgage is enforceable only for such portions of the debt as are not barred. It must also be borne in mind that we are discussing the case of a mortgage containing no provision as to the right of a mortgagee to make such advances or the manner in or time at which they shall be repaid. Section 2876 of the Civil Code, providing that where the holder of a subsequent lien is compelled to satisfy a prior lien for his own protection he "may enforce payment of the amount so paid by him, as a part of the claim for which his own lien exists," if applicable here, does not assist plaintiffs in this regard. It accomplished no more at most than to make the amounts paid a part of plaintiffs' then existing claim, subject to the same rules of limitation, but when such amounts were excluded from the new note the statute then running against the whole indebtedness continued to run against them. We are satisfied that recovery of these advancements must be held to be barred either by section 337 of the Code of Civil Procedure or by section 339 of the Code of Civil Procedure, and it is immaterial here which section is applicable.

It is urged that the plea in bar of section 339 of the Code of Civil Procedure was insufficient in that it omitted to state the subdivision of the section referred to, the section containing three subdivisions, and section 458 of the Code of Civil Procedure, providing that in pleading the statute of limitation it is not necessary to state the facts showing the defense, "but it may be stated generally that the cause of action is barred by the provisions of section (giving the number of the section and subdivision thereof, if it is so divided, relied upon) of the Code of Civil Procedure." Defendant

here alleged simply "that the indebtedness sued on herein is barred by the provisions of section 339 of the Code of Civil Procedure of the state of California." Subdivision 1 of the section in question was the only provision thereof that could by any possibility be applicable to this case. Subdivision 2 relates to actions against sheriffs, coroners, and constables, and subdivision 3 to actions to recover damages for the death of one caused by the wrongful act or neglect of another. No demurrer was interposed to the answer, which, for the purposes of the trial, was assumed to sufficiently present the defense, and the court made its findings thereon. Under these circumstances, we are satisfied that the attempt to plead subdivision 1 of section 339 should not be treated as a nullity, and that the objection to the manner of pleading it was waived by the failure of plaintiffs to urge such objection in the trial court. The appellant's specifications of insufficiency of evidence to sustain the findings upon the issues as to the statute of limitations are sufficient to present the question here under the liberal rule laid down by the more recent decisions, and whatever may be the rule as to a waiver of points by a failure to discuss them in the opening brief, we are satisfied that appellant's brief was not such as to indicate any waiver of his defense of the statute of limitations.

5. In view of our conclusions upon the question of the effect of the statute of limitations, it is unnecessary to consider at length any of the remaining points on which appellant states in his closing brief that he "especially relies for a reversal." There was sufficient evidence to support the findings as to the advances made for the protection of the security. While the findings are not as clear and definite as they might have been upon the question as to whether these advances were included in the $15,462.60 note of November 13, 1897, when construed liberally in support of the judgment, we think that they sufficiently show that they were not so included. There was sufficient evidence to support a finding that they were not included. As to the Churchill mortgage to the Los Angeles Savings Bank, assuming the same to be a valid lien upon the property, we are of the opinion that the appellant is entitled to no relief in this action, in the event that plaintiffs are not allowed to recover the amounts advanced, by reason of the plea of the statute of limitations.

The whole of the money borrowed by Churchill on his note and said mortgage was devoted to the p.. ment of amour ts constituting paramount liens on said land—were necessarily made for the protection of the property of appellant, constituting plaintiff's security, and appellant should not be granted the affirmative relief of having the property cleared of the lien without repaying the amount which was so borrowed and properly advanced by plaintiffs for the protection of their security. We find no other point requiring attention.

The judgment and order denying a new trial are reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Shaw, J., and McFarland, J., concurred.

Hearing in Bank denied.